UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 10-280 (RHK/JJG) |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **POSITION** |
| | ) | |
| JEREMY WAYNE PARKER, | ) | |
| | ) | |
| Defendant. | ) | |

The defendant, through the undersigned counsel, respectfully submits the following position regarding sentencing. Mr. Parker has no objections to the final PSR. Given his motivations for committing this offense — to assist family members — Mr. Parker seeks a slight downward variance from the advisory guideline range of 30-37 months. He seeks a sentence of 24 months.

**I.    Legal background.**

In the years following the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005), the relationship between a sentencing court and the sentencing guidelines has evolved well beyond the "advisory" label given to the guidelines by the Supreme Court. In more recent decisions, the Supreme Court has elaborated on the discretion a district court has to make sentencing decisions based on the facts of each case and broader policy questions. *Spears v. United States*, 129 S.Ct. 840, 843-44 (2009); *Kimbrough v. United States*, 128 S.Ct. 558, 575-76 (2007); *Gall v. United States*, 128 S.Ct. 586, 597-98 (2007). The practical reality after these decisions is that a sentencing judge, in evaluating each unique person that

stands to be sentenced along with facts of each case may "reject (after due consideration) the advice of the Guidelines." *Kimbrough*, 128 S.Ct. at 577 (Scalia, J., concurring). Further, the sentencing court may vary from the advisory guideline range based solely on policy considerations, including disagreement with the policy underlying the guidelines in a case. *Id.* at 570. This is true "even in the mine-run case." *Id.* at 563.

The sentencing procedures set forth by the Supreme Court make clear that the recommended guideline range is just that: a recommendation. For a sentencing judge, "the Guidelines should be the starting point and the initial benchmark" in determining a sentence. *Gall*, 128 S.Ct. at 596.

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.*

*Id.* at 596-97 (citation and footnote omitted) (emphasis added). The district court must "make an individualized assessment based on the facts presented." *Id.* at 597. Ultimately, a sentencing judge must "impose a sentence sufficient, but not greater than necessary." *Kimbrough*, 128 S.Ct. at 570 (citing 18 U.S.C. § 3553(a)). In doing so, the judge looks to the Guidelines for "general advice," but that advice must be "filter[ed] . . . through § 3553(a)'s list of factors." *Rita v. United States*, 551 U.S. 338, 358 (2007). Further, the *Gall* Court rejected the rule that extraordinary circumstances are required to justify a sentence outside the Guidelines range. *Gall,* 128 S.Ct. at 595. In imposing a just sentence, a

sentencing court examines the facts of a case and the defendant and applies them to the sentencing statute. Under 18 U.S.C. § 3553(a) the Court shall impose a sentence "sufficient, but not greater than necessary" and shall consider

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**II.     The 3553 factors.**

    **A.     The nature and circumstances of the offense.**

For a period of several months in 2008 and 2009, Mr. Parker used his self-taught computer skills to gain access to computers owned by Digital River and NASA. Exploiting that access, he moved a significant amount of funds to which he was not entitled to his bank account, and caused financial harm to these institutions. In addition to taking funds, the institutions spent money on addressing and fixing Mr. Parker's security breach. For this offense, he should be held accountable.

Mr. Parker hopes, however, that the Court considers additional circumstances surrounding the offense: his motivations. A few years ago, when Mr. Parker was in his early 20s, he saw his sister in an unfortunate situation. She had been working as a server at a

Chili's restaurant in Texas, and at the point that she and her fiancé learned that they were expecting a child, they were living in less than ideal conditions. During her third trimester, Mr. Parker's sister physically was not capable of working as a server and had to quit her job. They lived in a tiny, one-room extended stay hotel in Houston. Although his sister's fiancé had a job, it was not a well-paying one, and Mr. Parker saw what was coming: His future nephew would be living in a difficult environment for an infant. What he did, in part in an effort to help her and his soon-to-born nephew, was at once foolish and caring. He took money to provide a better living situation for them. He used the money he took from Digital River to pay the rent for a larger home in which they could raise their child.

    At about the same time, Mr. Parker's father was not doing well financially. His small refrigeration business was suffering in the economic downturn. The bills piling up, the power company cut electricity to Mr. Parker's father apartment. He had no air conditioning during a Houston summer, and food rotted in the refrigerator. Rent went unpaid, and his father began selling the business's assets. Again, Mr. Parker's response to his father's financial difficulties was unwise — he paid his father's bills with the ill-gotten gains of this offense — but it reveals the compassion for his family that has landed him before this Court for sentencing. In short, Mr. Parker's motivations for committing this offense were to take care of his family members. While a theft of this magnitude cannot be justified in any way, it is evidence that Mr. Parker, as his mother would say, is the kind of person that would give you the shirt off of his back. As she notes in the PSR, Mr. Parker is "always concerned about

the well-being of others." PSR ¶ 46.  Because his actions were motivated by a genuine, if misguided, concern for the wellbeing of his family, Mr. Parker seeks a modest downward variance to 24 months.

    **B.**    **The history and characteristics of the defendant.**

Mr. Parker was raised in Texas in a modest home, by two parents who did the best they could to raise him.  Mr. Parker was clearly a bright young man.  Although he did not finish school, this offense unfortunately demonstrates his significant computer skills, all of which are self-taught.  While his parents have acknowledged the need for Mr. Parker to have more initiative in terms of employment, it is clear that he has the intellectual ability to be successful in the future in terms of work.

    **C.**    **Respect for the law, just punishment and deterrence.**

Although Mr. Parker has some prior criminal history in Texas state court, he is a first-time federal offender.  Any sentence this Court imposes will result in Mr. Parker spending time in federal prison, followed by intensive supervised release.  Even a 24-month sentence is a significant penalty that will have the effect of punishing Mr. Parker and deterring him and others from future fraud crimes such as the instant offense.  In other words, a minor variance from the recommended guideline range will still adequately address the statutory sentencing factors.  In addition, this offense is likely to trigger a probation violation in his Texas case, and an extra layer of punishment and deterrence is likely to result.  The

consequence in Texas may include additional prison time.  Mr. Parker therefore seeks a variance to 24 months.

## Conclusion

Considering the arguments above, the defendant asks that the Court sentence him to 24 months.  He believes that such a sentence of no more than will be sufficient but not greater than necessary to serve the many goals of sentencing and would fairly reflect the unique circumstances of this case.

Dated:  May 18, 2011                                        Respectfully submitted,

*s/ Reynaldo A. Aligada, Jr.*
_____

REYNALDO A. ALIGADA, JR.
Attorney ID No. 319776
Attorney for Defendant
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415